**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| EBONY THAMES, | : | |
| | : | Hon. Joseph H. Rodriguez |
| | : | |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | Civil No. 21-1876 |
| | : | |
| BALLY'S PARK PLACE, LLC D/B/A | : | |
| BALLY'S ATLANTIC CITY, BOARDWALK | : | |
| REGENCY CORP. D/B/A CAESARS | : | |
| ATLANTIC CITY, JOHN DOE 1-5 | : | |
| (fictitious defendants), ABC PARTNERSHIP | : | OPINION |
| 1-5, and ABC CORPORATIONS 1-5 | : | |
| (fictitious corporate defendants), | : | |
| | : | |
| | : | |
| *Defendants.* | : | |
| | : | |

Presently before the Court is the motion to bar the expert opinions of Russell Kolins and for summary judgment filed by defendants, Bally's Park Place, LLC d/b/a Bally's Atlantic City and Boardwalk Regency Corp. d/b/a Caesars Atlantic City (together, "Defendants") [Dkt. 54]. The Court is in receipt of the opposition filed by plaintiff Ebony Thames ("Plaintiff") [Dkt. 56] as well as Defendants' reply [Dkt. 57]. The Court has considered the submissions of the parties' as well as oral argument advanced at the hearing convened in this matter on February 27, 2024 [Dkt. 62]. For the reasons set forth on the record and herein, the motion will be denied.

## I.  Background

By way of background, this case arises out of Plaintiff's fall from the roof of Bally's Wild West Casino in Atlantic City, New Jersey. On the evening of April 6, 2019,

1

Plaintiff was a patron at Defendants' property in Atlantic City, New Jersey. Plaintiff was served alcohol by Bally's employees during the evening. In the early morning hours of Sunday, April 7, 2019, Plaintiff was in a hotel room at Defendants' property when a security officer arrived to investigate a noise complaint. Upon arrival, the security officer encountered Plaintiff, who ran off down the hallway towards the fire tower. Plaintiff exited an unalarmed door onto the roof of the building then diverted her path from the walkway along the fire escape route where she fell from the third-floor roof of the adjoining building while attempting to climb down the facade. In order to reach the Bally's ledge where Plaintiff started to climb down the building, Plaintiff needed to traverse barriers that included HVAC piping, two five foot walls, and one nine-foot wall. Plaintiff fell several stories to the boardwalk below and, by this action, alleges she sustained severe and permanent injuries as a result.

## II.    Discussion

### a.  Exclusion of Expert Opinion

Defendants seek to bar the conclusions of Plaintiff's security expert, Russell Kolins, as net opinion. F.R.E. 702 and 703 govern the admissibility of expert testimony. F.R.E. 702, which superseded *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), provides that "a witness who is qualified as an expert by knowledge, skill, experience, training or education" may testify as to their opinion, subject to certain requirements. F.R.E. 702. The testimony must be helpful to the trier of fact, based on sufficient facts or data, and the product of reliable principles and methods. *See id*. Additionally, an expert's opinion must be based on facts or data that the expert has been made aware of or personally observed. *See* F.R.E. 703.

Defendants argue that "Mr. Kolins' conclusions constitute net opinion based on Mr. Kolins' own personal, subjective opinions regarding the facts in this matter." Br. in Supp. at Page 5 of 23. Defendants further contend that Mr. Kolins' opinions improperly extrapolate from the facts of a prior matter against one of the same defendants, Bally's, and that his opinions contain legal conclusions. *Id*. Specifically, Plaintiff challenges Mr. Kolins' opinions that Bally's "had an obligation to protect and prevent incidents to people on their property[,]" and that Bally's "failed to address and mitigate known issues on their property in protecting and preventing [such] incidents." *Id*. According to Defendants, Mr. Kolins drew these conclusions applying an unreasonably high standard created using his own personal, subjective beliefs that is unsupported in controlling case law. Id. at Page 5 of 23 – 6 of 23. In support of their position, Defendants refer to Mr. Kolins' testimony offered in response to an inquiry about whether the "obligation to protect" described in his Report would apply even in the absence of a hazard. *Id*. at Page 6 of 23. Mr. Kolins answered: "[w]ell, of course. Anybody who's on your property." *Id*.; Kolins. Dep. Tr. at 33:5-10. Defendants claim this creates an unreasonable duty of care; namely, that Defendants are "expected to protect against patrons even in the absence of a hazard." Br. in Supp. at Page 6 of 23.

In the Court's view, Defendants' objection to Mr. Kolin's opinion does not detract from its admissibility. Mr. Kolins' response to a question posing a hypothetical scenario is distinct from his opinion that Defendants had an obligation to protect Plaintiff under the specific circumstances of this case. As Mr. Kolins set forth in his Report, the materials he relied on in forming this opinion included information that "Defendant had a history of people being up on and falling off the roof[,]" "[p]eople being on the roof was so prevalent that security was responsible for patrolling this area for customers[,]"

and "Defendant failed to place a reasonable barrier to detect, delay and ultimately respond to people who were in this unsafe area." Kolins Report at *10. Considered together, this information reasonably explains the factual basis underpinning Mr. Kolins' opinion, giving the "'why and wherefore' of the opinion, rather than a mere conclusion."[1] *Iudici v. Camisa*, No. CV123466JXNJBC, 2022 WL 3998295, at *2 (D.N.J. Sept. 1, 2022) (quoting *Curtis v. Besam Grp.*, No. 05-2807, 2007 WL 3232589, at *7 (D.N.J. Oct. 31, 2007)).

### b. Summary Judgment

Courts will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might impact the "outcome of the suit under the governing law." *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 261 (3d Cir. 2012). A dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party. *Id.* In determining the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable inferences and doubts should be resolved in favor of the nonmoving party. *Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010).

The movant has the initial burden of showing through the pleadings, deposition testimony, answers to interrogatories, admissions on file, and any affidavits that the

---

[1] Defendants also fault Mr. Kolins for having "never provided a source for his definition of a 'reasonable barrier' versus a 'necessary barrier.'" Br. in Supp. at Page 9 of 23. But this objection goes to the weight to be given to his conclusion, not to the admissibility of his opinion. Similarly, Defendants' objection to Mr. Kolins' characterization of Plaintiff as a "lost soul" at deposition is best addressed at trial as it likely extends beyond the scope of the expert opinions rendered in his Report.

nonmovant has failed to establish one or more essential elements of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party carries its burden, the burden then shifts to the nonmovant who must establish that summary judgment is inappropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). But if the nonmoving party "'fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial,' then summary judgment is appropriate for the moving party." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (alterations in original) (quoting *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548).

### c. Necessity of Expert Opinion

Defendants contend that summary judgment should be entered in their favor because "Plaintiff has failed to retain an expert to establish the alleged negligence of Moving Defendants in relation to the protection and safety of Plaintiff" and "Plaintiff has also failed to retain an expert to offer any opinion that the conduct of the security officers deviated from any acceptable standard of care." Br. in Supp. at Page 12 of 23.

"Generally, in tort actions, expert testimony is indispensable only when the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment about it." *J.W. v. L.R.*, 325 N.J. Super. 543, 547 (App. Div. 1999); *Butler v. Acme Markets, Inc.*, 89 N.J. 270, 445 A.2d 1141 (1982) ("Except for malpractice cases, there is no general rule or policy requiring expert testimony as to standard of care; even in malpractice case, facts of a given case may be such that

common knowledge possessed by laymen may permit a finding that duty of due care has been breached.").

This is not such a case where the absence of additional expert opinion is fatal. The expert testimony of Mr. Kolins may be admitted to establish general principles for negligence, and the Court will instruct the jury regarding liability. The nature of the alleged harm here is not so esoteric that lay jurors, properly instructed as to the law, and assisted by the testimony of Mr. Kolins, will not be able to render a decision on causation without the aid of more specific expert opinion. As such, Defendants' motion for summary judgment will be denied on this issue.

### d. Duty of Care and Breach

Defendants submit that even if Mr. Kolins' opinions are admissible, Plaintiff has failed to show that Defendants breached a duty of care owed to her. Br. in Supp. at Page 14 of 23. Specifically, Defendants argue that Plaintiff cannot sustain her burden of proof because she is unable to allege the dangerous condition that caused her injuries, and she is unable to show a dangerous condition that Defendants knew or should have known about. *Id.* at Page 15 of 23.

Broadly speaking, to recover on a negligence claim, a plaintiff must prove that (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, and (3) the breach of the duty proximately caused the plaintiff's injury. *Brown v. Racquet Club of Bricktown*, 95 N.J. 280, 288 (1984). In a premises liability case, as here, the type of duty owed by defendant to plaintiff generally depends upon plaintiff's classification. *Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 433 (1993) (noting that the three classifications are business invitee, licensee and trespasser). Business invitees are

6

defined as individuals that "come by invitation, express or implied." *Snyder v. I. Jay Realty Co.*, 30 N.J. 303, 312 (1959). The duty owed business invitees, such as Plaintiff here, is a duty of reasonable care to guard against any dangerous conditions on its property that defendant(s) either knew about or should have discovered. That standard of care encompasses the duty to conduct a reasonable inspection to discover latent dangerous conditions. *Hopkins*, 132 N.J. at 434. Of course, this duty only extends to those actions which are "within the scope of the invitation." *Nisivoccia v. Glass Gardens, Inc.*, 175 N.J. 559, 563 (2003); *see also Irizarry v. Pathmark Stores, Inc.*, No. A-4307-05T2, 2007 WL 248807, at *2 (N.J. Super. Ct. App. Div. Jan. 31, 2007).

### i.   Dangerous Condition

Defendants argue that Plaintiff cannot sustain the burden of proof required to show negligence because she is unable to allege the dangerous condition that caused her injuries. In response, Plaintiff's opposition filings set forth the following proofs which she contends are sufficient to permit a reasonable juror to find a dangerous condition:

(1) Defendant failed to place a reasonable barrier to detect, delay and respond to the roof area, which was known to be unsafe. Jackson Cert., Ex. P, p. 10.

(2) Defendant did not have cameras in the stairwell. Jackson Cert., Ex. P, p. 10.

(3) Defendant's employee, security officer Glover, waited one minute and sixteen seconds before pursuing plaintiff down the stairwell. Jackson Cert., Ex. P, p. 10.

(4) There was no response to plaintiff's roof access for the three minutes and forty-nine seconds she was on the roof, despite cameras capturing her every [sic] because Homeland Security designated this area a sensitive area. Jackson Cert., Ex. P, p. 11.

(5) There were no intrusion devices on the door used to access the roof, like an alarm, which would have alerted the plaintiff, as well as security, that someone accessed a restricted area. Jackson Cert., Ex. P, p. 11, Wright Cert., Ex. E, p. 9.

(6) There was no monitoring of the rooftop cameras, so Thames presence on the roof was not detected.

(7) There were no signs, warnings, alarms or other indicators to alert either the plaintiff or security operations that plaintiff had entered a restricted area.

Br. in Opp. at *14-17.

According to Defendants, Plaintiff ignores critical facts and her asserted proofs are insufficient to show a dangerous condition for the following reasons:

(1) The height of the roof does not constitute a dangerous condition under premises liability case law.

(2) Plaintiff has failed to show that the roof as constructed constitutes a dangerous condition.

(3) The access point to the roof is not a dangerous condition because the New Jersey fire code required that the Fire Tower #14 door, which Plaintiff exited to reach the roof, remained unlocked.

(4) The three exit signs along an illuminated, covered walkway, with raised barriers along the walkway, was present for purposes of those moving from Fire Tower #14 to Fire Tower #13.

Br. in Supp. at Page *14-15 of 26.

On this issue, the Court is satisfied that the proofs asserted by Plaintiff are sufficient to create a question of fact as to the existence of a dangerous condition. "Whether the property presents a dangerous condition . . . [is] generally questions of fact." *Archacavage v. N. Burlington Cnty. Reg'l Sch. Dist.*, No. A-2799-16T4, 2018 WL 2049273, at *3 (N.J. Super. Ct. App. Div. May 3, 2018) (quoting *Vincitore ex rel. Vincitore v. New Jersey Sports & Exposition Auth.*, 169 N.J. 119, 123, 130 (2001)). The

facts of this case and Plaintiff's proofs are strikingly similar to those considered on Bally's summary judgment motion in *Abbott Estate v. Bally's Park Place, LLC*, Docket No. ATL-5351-14. *See* Certification of William Wright, Esq. ¶ 7, Exhibit E. In that case, the plaintiff, Stephen Abbott (hereinafter "Abbott"), exited an unlocked door close to the door Plaintiff exited from. Br. in Opp. at 17. The door exited onto the same roof. *Id*. Abbott climbed over the same parapet walls and the same HVAC equipment Plaintiff climbed over. *Id*. Abbott crossed between the two casino properties on the same structure Plaintiff crossed over. *Id*. Abbott was walking along the edge of the rooftop when he fell to his death. Under those facts, the New Jersey Superior Court rejected Bally's position that no dangerous condition was present as a matter of law, instead concluding that a rational juror could find "Defendants were negligent with respect to their actions, and inactions, with regard to access to the rooftop." *See Abbott* at *4, 6-7. Based on the proofs set forth in this action and construing the record in a light most favorable to Plaintiff, and in view of the holding in *Abbot*, this Court finds Plaintiff has presented sufficient proofs to create a jury question on whether Defendants were negligent with respect to their actions, and/or inactions, with regard to access to the roof. Summary judgment will be denied as to this issue, accordingly.

    **ii.   Notice**

    Defendants argue that Plaintiff is unable to sustain her burden of proof because she cannot demonstrate the existence of a dangerous condition that Defendants knew or should have known about. *See* Br. in Supp. at Page 14 of 23, Page 15 of 23. "Owners of premises are generally not liable for injuries caused by defects of which they had no actual or constructive notice and no reasonable opportunity to discover." *Troupe v.*

*Burlington Coat Factory Warehouse Corp.*, 443 N.J. Super. 596, 601–02, 129 A.3d 1111, 1114 (App. Div. 2016). For this reason, "'[o]rdinarily an injured plaintiff . . . must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident.'" *Id.* (quoting *Nisivoccia*, 175 N.J. at 563, 818 A.2d 314).

Construing the record in a light most favorable to Plaintiff, the body of proofs set forth are sufficient to create a genuine question of material fact on whether Defendants had actual or constructive notice of the condition alleged to have resulted in Plaintiff's injury. Because evidence has been presented of a separate injury arising out of essentially the same inanimate condition six years prior to Plaintiff's injury – which was the subject of a summary judgment motion resolved in favor of the plaintiff in that action and decided shortly before Plaintiff's injury – such evidence is probative of whether Defendants had notice.

The New Jersey Superior Court analyzed the characteristics of the property in its July 2018 opinion (nine months prior to Plaintiff's fall) and "ha[d] no difficulty finding that a reasonable juror could find that Defendants were negligent by failing to prevent patrons from accessing the rooftop" and that "it was foreseeable that patrons, especially intoxicated patrons, might gain access to the rooftop and injure themselves." *Abbott* at *9. In arriving at this conclusion, the court reasoned that

> The creation of an attractive, comfortable and safe space is vital to the success of a resort. While it's important for hotel patrons to feel free and be uninhibited to move around and explore the property's amenities at their leisure, ordinary prudence - common sense - dictates that in the interest of both the hotel operator and the patron, there must be some reasonable limitations on access to portions of the property. It's highly unlikely that casino hotels would knowingly permit patrons to roam about the kitchens, executive offices or employee locker rooms. Anyone who tried to do so would very likely be stopped immediately. Yet Defendants would urge this

> Court, and ultimately a jury, to embrace as acceptable property owner conduct, the lack of any restrictions on Mr. Abbott's ability to access a hotel rooftop; worse still, a rooftop where there are no guest-related activities occurring, nor amenities being offered by the hotel for its patrons.

*Id.* at *8. The court concluded by suggesting that "an alarmed-door might be one solution" to protect against the "foreseeable [risk] that patrons, especially intoxicated patrons, might gain access to the rooftop and injure themselves." *Id.* at *9.

Here, Plaintiff has asserted proofs capable of supporting a reasonable inference that her injury proceeded from essentially the same condition analyzed by the Superior Court in *Abbott* that gave rise to a jury question on whether Bally's was negligent with respect to its actions, and/or inactions. *See id* at *6. Specifically, Plaintiff has set forth competent evidential material that she exited a door close in proximity to where Abbott exited onto the same roof; she climbed over the same parapet walls and the same HVAC equipment Abbott climbed over; and she crossed between the two casino properties on the same structure Abbott crossed over.[2] Viewed alongside the Superior Court's decision in Abbott and the rational conclusions drawn therein – about which Defendants must have been aware of at the time of Plaintiff's injury – this evidence is sufficiently probative of whether Defendants had knowledge of the condition to create a genuine question of fact on the issue of notice. Thus, the Court will deny Defendants' motion to summary judgment on this issue.

---

[2] Defendants contend that, "[s]ince the Abbott case, they locked the door that Mr. Abbott used to get out" and emphasize that the door Plaintiff exited must remain unlocked pursuant to fire code. February 27, 2024 Hearing Tr. 20:21-22 [Dkt. 63]. But these facts fail to resolve whether the duty owed by Defendants, given the conditions and what was known at the time of Plaintiff's injury, required more of them to protect against the alleged risk of injury posed by patrons' access to the roof *via* the nearby door used by Plaintiff, short of locking it, such as the one suggested by Judge Johnson in *Abbott*. This remains a question of fact appropriately committed to a jury.

### iii.    Dram Shop

Defendants move for summary judgment on Plaintiff's count alleging Dram Shop liability. Under the "Dram Shop Act[,]" N.J.S.A. 2A:22A-1 *et seq*., a defendant is liable for foreseeable injuries caused by negligent service of alcoholic beverages. Negligence under the statute is defined, for purposes of this case, as service of a visibly intoxicated person. N.J.S.A. 2A:22A-5(b). Thus, "[t]o defeat a motion for summary judgment in a dram shop case, a plaintiff must present sufficient direct or circumstantial evidence that would permit a jury to reasonably and legitimately deduce that a beverage server served alcoholic beverages to the person at issue while he or she was visibly intoxicated." *See Halvorsen v. Villamil*, 429 N.J. Super. 568, 575, 60 A.3d 827, 832 (App. Div. 2013). The question for the Court to consider, therefore, is whether Plaintiff's proofs are sufficient to create a material issue of fact that Plaintiff was visibly intoxicated when she was served an alcoholic beverage at Bally's and, if so, whether her injury was a foreseeable consequence of that.

In support of Plaintiff's position that she was visibly intoxicated at the time of service, Plaintiff points to the deposition testimony of Lisa Keller recounting that she told her relief at the end of her shift to "keep an eye on [Plaintiff.]" Br. in Opp. at *22-23. In response, Defendants contend that Plaintiff misconstrues this potion of Ms. Keller's testimony and clarifies that the statement was in relation to the specific representation made in Ms. Keller's incident statement, dated April 12 (6 days after the incident), that "[Ms. Keller] told [her] relief on the next shift to keep an eye on the girl and the machine ***as she was not playing***." Reply at *7 (emphasis added).

Viewing the testimony in context, the Court agrees that Plaintiff raises a legitimate issue regarding the clarity of Ms. Keller's testimony. After suggesting that she advised her relief that Plaintiff was "in the yellow" – a reference to what she had previously testified is a category in the red light/green light alcohol system indicating "you want to keep an eye on them" – Ms. Keller was asked a follow up question when she seemingly recanted about Plaintiff being "in the yellow," asserting a failure of recollection. Wright Cert. ¶ 4, Exhibit. B, Keller Dep. Tr. 20:24-25; 21:1-2; 48:16-18.

> Q. First of all, can you recall who your relief was?
>
> A. I can't remember. It is common practice though.
>
> Q. What is common practice?
>
> A. To enlighten your relief of that type of incident, a non-customer, somebody that could be what we talked about prior, in the yellow.
>
> Q. Was she in the yellow at this point?
>
> A. Not that I'm aware of. That wasn't my issue with her.

*Id.* at 48:8-18.

Because Ms. Keller's equivocal and unclear statements may be interpreted differently and their subject matter bears on the material question of whether Plaintiff was visibly intoxicated at the time of service, this issue is appropriately committed to a trier of fact. Defendants' motion for summary judgment will therefore be denied on this issue.

## III.   Conclusion

For the reasons set forth herein and on the record at the hearing convened on February 27, 2024, Defendants' motion will be denied. An appropriate order shall follow.

June 17, 2024

<u>s/ Joseph H. Rodriguez</u>
Hon. Joseph H. Rodriguez, U.S.D.J.

14